1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF MISSISSIPPI

3
   UNITED STATES OF AMERICA,        )
4                                   )
            Plaintiff,              )        CASE NO. 1:16CR50
5                                   )
               VS.                  )
6                                   )
   LINDSEY N. DOWNS,                )
7                                   )
            Defendant.              )
8   _____

9

10        WAIVER OF INDICTMENT / FILING OF INFORMATION AND
        PLEA AS TO COUNTS 1, 2 AND 3 OF THE INFORMATION
11       BEFORE SENIOR DISTRICT JUDGE GLEN H. DAVIDSON
            THURSDAY, AUGUST 25, 2016; 2:00 P.M.
12                    OXFORD, MISSISSIPPI

13  FOR THE GOVERNMENT:

14        United States Attorney's Office
          ROBERT MIMS, ESQ.
15        900 Jefferson Avenue
          Oxford, Mississippi  38655-3608
16

17  FOR THE DEFENDANT:

18        Farese, Farese & Farese
          TONY FARESE, ESQ.
19        122 Church Street
          Post Office Box 98
20        Ashland, Mississippi  38603-0098

21
          Proceedings recorded by mechanical stenography, transcript
22  produced by computer.

23  _____

                RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
24               FEDERAL OFFICIAL COURT REPORTER
                911 JACKSON AVENUE EAST, SUITE 369
25                  OXFORD, MISSISSIPPI 38655

```
1        (CALL TO ORDER OF THE COURT)

2            THE COURT:  Do you need any time, Mr. Farese?

3            MR. FARESE:  No, sir.  We're good.

4        (Pause)

5            THE COURT:  Okay.  The Court next calls Cause No.

6   1:16CR50, United States of America v. Lindsey S. Downs.  The

7   record should reflect that Ms. Downs is in court with her

8   attorney, Mr. Anthony L. Farese.  The Government is represented

9   in this proceeding by Assistant United States Attorney Robert

10  Mims.  If we're ready to proceed, if you'll come stand before

11  the Court, please.

12            MR. FARESE:  Yes, sir.

13        (PARTIES COMPLYING)

14            THE COURT:  Now, this is a plea to an information, as

15  I understand it?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  Ms. Downs, there are a number of

18  questions that I must ask you; and the first series of

19  questions will go to the fact that you're waiving indictment by

20  a grand jury and agreeing to plead to an information.

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  You're real nervous, aren't you?

23            THE DEFENDANT:  A little bit.

24            THE COURT:  How old are you?

25            THE DEFENDANT:  Twenty-three.
```

1          THE COURT:  Well, it's a shame you're in the

2   predicament you're in.  I tell you, if you'll raise your right

3   hand and be sworn, please, ma'am.

4       (OATH ADMINISTERED BY THE COURTROOM DEPUTY)

5          THE COURT:  Give me your full name.

6          THE DEFENDANT:  Lindsey Nicole Downs.

7          THE COURT:  And your age?

8          THE DEFENDANT:  Twenty-three.

9          THE COURT:  How much education do you have?

10          THE DEFENDANT:  I have an associate's from Northeast

11  Community College, and I've started on my bachelor's at Ole

12  Miss.  I haven't gotten it yet, though.

13          THE COURT:  How much time -- how many semester hours

14  do you have at Ole Miss?

15          THE DEFENDANT:  I think I have one semester left; and

16  then I have to do my student teaching, a semester.  And I was

17  going to have my bachelor's.  I still had to pass my Praxis

18  too.

19          THE COURT:  Do you have any employment experience?

20  Have you worked anywhere?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  While you were in school?

23          THE DEFENDANT:  Yes, sir.  I worked at Region IV

24  Mental Health Care for a year, and Shining Star Gymnastics and

25  Kroger, all at the same time, while I went to Northeast.  And

1    I've worked --

2            THE COURT:  Where were these stores; what town were

3    they located in?

4            THE DEFENDANT:  Corinth, Mississippi.

5            THE COURT:  Corinth?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Is that where you went to high school?

8            THE DEFENDANT:  No.  I went to high school at Walnut,

9    Mississippi.  I worked at a grocery store there and a library

10   when I was in high school.

11           THE COURT:  Library and the grocery store in Walnut.

12   And then you worked, also, at a grocery store in Corinth?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  For the life of me, I don't understand

15   why you're before me.

16           THE DEFENDANT:  Bad decisions.

17           THE COURT:  That's for sure.  Yeah.  It's a shame.

18   Have you been under the care of any doctor, psychiatrist, any

19   medical professional?

20           THE DEFENDANT:  A nurse practitioner at the Tippah

21   County jail.

22           THE COURT:  You're not presently under the influence

23   of any drug, medication, any substance that would affect your

24   ability to think and reason?

25           THE DEFENDANT:  No, sir.

```
 1              THE COURT:  Okay.  And Mr. Farese is your attorney?

 2              THE DEFENDANT:  Yes, sir.

 3              THE COURT:  Have you been furnished a copy of the

 4    charges against you?  Do you know what you're charged with?

 5              THE DEFENDANT:  Yes, sir.

 6              THE COURT:  Well, in this information, you're charged

 7    with knowingly and intentionally possessing, with intent to

 8    distribute, methamphetamine, a Schedule II controlled

 9    substance.

10        And then possession of a firearm?  Is that correct,

11    Mr. Mims?

12              MR. MIMS:  Yes, sir.

13              THE COURT:  Charged with possession of a firearm in

14    furtherance of the drug conspiracy charge.  Do you understand

15    what you're charged with?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  Do you understand that you have a

18    constitutional right to be charged by an indictment returned by

19    a grand jury, but you may waive that right and consent to being

20    charged by an information filed by the United States Attorney;

21    instead of an indictment, the felony charges brought against

22    you in this case are brought by the United States Attorney by

23    the filing of an information; that unless you waive indictment,

24    you may not be charged with a felony unless a grand jury finds,

25    by a return of an indictment, that there's possible -- probable
```

1  cause to believe that a crime was committed and that you

2  committed it?

3      If you do not waive indictment, the Government may present

4  your case to a grand jury and request that it indict you.  A

5  grand jury is composed of at least 16 and not more than 23

6  persons.  And, before you can be indicted, at least 12 of those

7  grand jurors must find that there's a probable cause to believe

8  that you committed the crime with which you've been charged.

9      The grand jury might or might not indict you.  If you

10  waive indictment by the grand jury, the case will proceed

11  against you on the United States Attorney's information just as

12  though you had been indicted.

13      Now, Ms. Downs, I'm asking you, Have you discussed the

14  matter of waiving the indictment by a grand jury with your

15  attorney, Mr. Farese?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand your right to be

18  indicted by a grand jury?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Have any threats or promises been made to

21  you to induce you to waive indictment?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  Is it your desire to waive indictment and

24  to proceed with this information?

25          THE DEFENDANT:  Yes, sir.

1           THE COURT:  Mr. Farese, do you know of any reason why

2  she should not waive indictment?

3           MR. FARESE:  I do not, Your Honor.

4           THE COURT:  Okay.  If it's your desire to waive

5  indictment, Ms. Downs, let's have her execute the waiver of

6  indictment here in open court.

7       (Parties complying)

8           THE COURT:  Okay.  The waiver has been signed by the

9  defendant, by her attorney, Mr. Farese; and the Court has

10  approved the same.  The information may be filed and made a

11  part of the record in this case, as will the waiver.

12       Now, let's see, Mr. Mims, is this a three-count

13  information?

14           MR. MIMS:  Yes, sir.

15           THE COURT:  Okay.  Now, is it your desire, Ms. Downs,

16  to change the previously entered plea or -- well, not

17  previously entered plea.  But it's your desire to plead guilty

18  to these charges?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Before accepting your plea, there are a

21  number of questions that I must ask you to assure that it is a

22  valid plea.  If you do not understand any of the questions or,

23  if at any time, you wish to confer with your attorney,

24  Mr. Farese, please let me know; and I'll permit you to do so

25  since it is essential to a valid plea that you understand each

1  question before you answer.  Now, you've previously been sworn.

2  Do you understand you're under oath?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you understand that, having been

5  sworn, your answers to my questions will be subject to the

6  penalties of perjury or making a false statement if you do not

7  answer truthfully?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  You told me you were 23.

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And you just nearly have a college

12  degree, a bachelor's degree.  You lack about one semester, and

13  you'll practice teaching; is that right?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And where do you presently live?

16          THE DEFENDANT:  Tiplersville, Mississippi, with my

17  mother.

18          MR. FARESE:  It's Brenda Downs, Your Honor, which is,

19  technically, her grandmother; but she knows her as her mother.

20  Ms. Brenda Downs has raised her.  Her mother's alive in

21  Florida; but, actually, Brenda Downs has served in the mother

22  role in her life.

23          THE COURT:  Okay.  And where does your grandmother

24  live, now?

25          THE DEFENDANT:  Tiplersville, Mississippi.

1          MR. FARESE:  Yes, sir.  In Tippah County there, right

2  outside of Walnut, between Walnut and Falkner.

3          THE COURT:  Okay.  And you went to high school in

4  Walnut.

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And went to Northeast.  And then you --

7  when you came over here at Ole Miss, did you live in Oxford on

8  campus?

9          THE DEFENDANT:  No, sir.  I drove back and forth.

10         THE COURT:  Commuted?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Okay.  Have you been able to confer with

13 Mr. Farese relative to these charges in this matter?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Now, I've asked you -- and you've told me

16 you're not under the influence of any drug, medicine, or

17 alcoholic beverage, any substance that would affect your

18 ability to think and reason today?

19         THE DEFENDANT:  Right.  Yes, sir.

20         THE COURT:  Mr. Farese, and Mr. Mims, do you have any

21 reason, or any information, to doubt the competency of this

22 young lady to plead guilty?

23         MR. MIMS:  No, sir, Your Honor.

24         MR. FARESE:  I do not, Your Honor.  I've had the

25 opportunity to meet with her numerous times.  She's been housed

1   in Ripley, Mississippi, which is 15 miles from my office; and

2   I've had the opportunity to visit with her on a regular basis.

3   There is absolutely no doubt about her competency.

4           THE COURT: She been in jail in Ripley?

5           MR. FARESE: Yes, sir. She was initially over here,

6   and then taken to Mason -- did you go to Mason -- okay. Taken

7   to Ripley, Your Honor, and been housed over in Tippah County.

8           THE COURT: You've had ample opportunity to discuss

9   this matter with your attorney, Mr. Farese?

10          THE DEFENDANT: Yes, sir.

11          THE COURT: Are you satisfied with your attorney's

12   representation?

13          THE DEFENDANT: Yes, sir.

14          THE COURT: Do you understand that, under the

15   Constitution and the laws of the United States, you're entitled

16   to a trial by a jury on the charges contained in this

17   information?

18          THE DEFENDANT: Yes, sir.

19          THE COURT: Do you understand that, at a trial, you

20   would be presumed to be innocent; the Government would have the

21   burden of proof and would be required to prove you guilty by

22   competent evidence beyond a reasonable doubt before you could

23   be found guilty; and you would not have to prove that you were

24   innocent?

25          THE DEFENDANT: Yes, sir.

1          THE COURT:  Do you understand that, in the course of

2   the trial, the witnesses for the Government would have to come

3   to court and testify in your presence; your attorney could

4   cross-examine the witnesses for the Government; could object to

5   evidence offered by the Government; and could offer evidence on

6   your behalf?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you understand that, at a trial, while

9   you would have the right to testify if you chose to do so, you

10  also would have the right not to testify and no inference or

11  suggestion of guilt could be drawn from the fact that you did

12  not testify?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  If you plead guilty and I accept your

15  plea, do you understand that you'll waive your right to a trial

16  and the other rights I have discussed with you?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  There will be no trial, and I will enter

19  a judgment of guilty and sentence you on the basis of your

20  guilty plea after considering a Presentence Report.

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  If you plead guilty, do you understand

23  that you'll also have to waive your right not to incriminate

24  yourself since I may ask you questions about what you did in

25  order to satisfy myself that you're guilty as charged; and

1  you'll have to acknowledge your guilt?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Now, having discussed your rights with

4  you, do you still want to plead guilty?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And you've received a copy of the

7  information.  You know what the charges are against you.

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now, let's see.  Okay.  In Counts 1 and 2

10  of the information, you're charged with knowingly and

11  intentionally possessing, with intent to distribute,

12  methamphetamine.

13      Now, before you could be convicted in this court of

14  Counts 1 and 2, the Government would have to prove, by

15  competent evidence beyond a reasonable doubt, first, that you

16  knowingly possessed a controlled substance.  Second, that the

17  substance was in fact methamphetamine; and, third, that you

18  possessed the substance with intent to distribute it.  To

19  establish the elements of the offense charged in Count 3 of the

20  information -- let's see.  Those are the three elements as to

21  Counts 1 and 2.

22      Now, to establish the elements in Count 3 of the

23  information, which charges that you did knowingly and

24  intentionally possess a firearm during, and in relation to, a

25  drug-trafficking crime, to wit, possession with intent to

1  distribute methamphetamine, a schedule II controlled narcotic

2  substance, the Government must prove, beyond a reasonable

3  doubt, first, that you committed the crime charged in Count 1;

4  and that you knowingly possessed a firearm in furtherance of

5  the commission of the crime charged in Count 1.

6     To prove that you possessed a firearm in furtherance of

7  the conspiracy, the Government must prove that you possessed a

8  firearm that furthers, advances, or helps forward the

9  drug-trafficking crime.  Now, do you understand those elements

10  that the Government would have to prove?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Now, let's see.  Mr. Farese, Mr. Mims,

13  you gentlemen follow me with this.  I believe -- good gracious.

14  The maximum possible penalties in this case on Counts 1 and 2

15  would be a period of incarceration of not more than 20 years on

16  each one of those counts.  So that would be no more than

17  40 years?

18        MR. FARESE:  Yes, sir.

19        MR. MIMS:  Yes, sir.

20        THE COURT:  Count 3, a period of incarceration of not

21  less than 5 years and not more than life, which must be served

22  mandatory and consecutive to the sentence in Count 1 and 2; a

23  fine of not more than $2 million, 250,000 -- is that --

24        MR. FARESE:  That's correct, Your Honor.

25        THE COURT:  A period of supervised release of not

1  more than 5 years.  Right, Mr. Mims?

2            MR. MIMS:  Yes, sir.  Well, Your Honor, on Counts 1

3  and 2, I believe it would be at least 3 years' supervised

4  release; and, on Count 3, it would be --

5            THE COURT:  Not more than five.

6            MR. MIMS:  -- not more than 5 years.

7            THE COURT:  Well, for the three counts, it'd be not

8  more than 5 years, wouldn't it?  You don't stack supervised

9  release.

10           MR. TOLLISON:  Likely not.  I expect it would be

11  5 years supervised release would be the maximum you'd have.

12           THE COURT:  Yeah.  And a mandatory special assessment

13  of $100 in each count, which would be a $300 mandatory special

14  assessment.  Do you understand those maximum possible

15  penalties?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Have you and Mr. Farese talked about how

18  the Sentencing Commission guidelines might apply to your case?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Do you understand that I will not be able

21  to determine the guideline sentence for your case until after

22  the Presentence Report has been completed, and you and the

23  Government have had an opportunity to challenge the facts

24  reported by the probation officer?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you also understand that, after it has

2   been determined what guideline applies to your case, that I

3   have the authority, in some circumstances, to impose a sentence

4   that is more severe or less severe than the sentence called for

5   by the guidelines?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Do you understand that, under some

8   circumstances, you or the Government may have the right to

9   appeal any sentence that I impose?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Do you understand that parole has been

12   abolished; and that, if you're sentenced to prison, you'll not

13   be released on parole?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Do you understand that if the sentence in

16   this case is more severe than you expected, you'll still be

17   bound by your plea; and you'll have no right to withdraw it?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Now, Mr. Mims, is there a recommended

20   sentence in this case?

21          MR. MIMS:  Yes, sir, Your Honor, in a way.  In

22   Paragraph 5 of the plea supplement -- well, it should be

23   Paragraph 4, but --

24          THE COURT:  Let me follow you.  Just a moment.

25          MR. MIMS:  Yes, sir.  It's on page 3 at the bottom.

1              THE COURT:  Okay.  Now, bring it to my attention,

2   Mr. Mims.

3              MR. MIMS:  Your Honor, as you see at the bottom of

4   page 3 of the plea supplement, there's an 11(c)(1)(C) agreement

5   that the amount of methamphetamine attributable to the

6   defendant for sentencing guideline purposes is at least

7   200 grams but less than 350 grams of methamphetamine.

8              THE COURT:  Okay.  So you recommend that the -- in

9   computing the guidelines, that -- at least 200 grams but less

10  than 350 grams of methamphetamine.  Should the Court not accept

11  this, the defendant will not be bound by the plea agreement and

12  will have a right to withdraw the plea agreement.  Otherwise,

13  there is no agreement as to the sentence to be imposed, which

14  will be in the sole discretion of the Court.

15      Okay.  You understand, Mr. Farese, and Ms. Downs, if the

16  Court does not accept this computation -- recommended

17  computation of the amount of methamphetamine, that you'll be

18  informed of that; and you'll be permitted to withdraw your

19  guilty plea and go to trial?  You understand that?

20             THE DEFENDANT:  Yes, sir.

21             MR. FARESE:  Yes, sir, Your Honor.

22             THE COURT:  Okay.  Now, do all parties agree that the

23  terms of this plea agreement have been accurately stated here

24  in open court?

25             MR. MIMS:  Your Honor, if I may, may I summarize the

1   plea agreement for the Court?

2           THE COURT:  Yes.  Yes.  Okay.  Yes.  Sure.

3           MR. MIMS:  Your Honor, the defendant agrees to plead

4   guilty under oath to Counts 1, 2, and 3 of the information.

5   Counts 1 and 2 charge the defendant with possession, with

6   intent to distribute, methamphetamine in violation of Title 21,

7   U.S. Code, Section 841(a)(1) and (b)(1)(C).  Count 3 charges

8   the defendant with possession of a firearm during, and in

9   relation to, a drug-trafficking crime in violation of Title 18,

10  U.S. Code, Section 924(c)(1)(A).

11      And, Your Honor, I need to point out one error in the plea

12  agreement that we have corrected today by hand; and that is at

13  the top of page 2.  The original plea agreement said that, as

14  to Count 3, the supervised release was a term of not more than

15  3 years.  That is an error.  It should be not more than

16  5 years.

17      It was stated correctly in the indictment, in the notice

18  of penalties.  It also was stated correctly by the Court

19  earlier when reviewing the potential penalties.  It was just an

20  error in the plea agreement.  The parties have scratched

21  through the three and written a five, and we've all initialed

22  it on the original.

23      May I continue with the summary?  The Government agrees

24  not to charge the defendant with any other offenses arising

25  from, or related to, the above charges.  The agreement does not

1  bind any prosecuting authority of any state or any other

2  federal district.  If the defendant violates this agreement,

3  all statements made pursuant hereto will be admissible against

4  the defendant.

5     Finally, apart from being advised of the applicability of

6  the sentencing guidelines, and other than as set forth

7  elsewhere in the plea documents, no promise has been made to

8  the defendant as to what punishment the Court might impose.

9  The defendant's agreement is knowing, free, and voluntary.  The

10  defendant's pleading guilty because she is in fact guilty.

11     THE COURT:  Okay.  Now, do all parties agree that the

12  substance of the plea agreement has been accurately stated here

13  in open court?

14     MR. FARESE:  Yes, sir, Your Honor.

15     THE DEFENDANT:  Yes, sir.

16     THE COURT:  Ms. Downs, has anyone made any promise or

17  promises to you, other than contained in this plea agreement,

18  that have induced you to plead guilty?

19     THE DEFENDANT:  No, sir.

20     THE COURT:  Very well.  The plea agreement, and the

21  supplement to the plea agreement, may be filed and made a part

22  of the record in this case.  Now, other than this plea

23  agreement and the fact that Mr. Farese has discussed the

24  Sentencing Commission guidelines with you, has anyone made any

25  prediction, prophecy, or promise to you as to what your

1  sentence will be?

2            THE DEFENDANT:  No, sir.

3            THE COURT:  Okay.  Now, at this time in the

4  proceeding, Ms. Downs, I'm going to call on Mr. Mims, the

5  prosecutor, to summarize what the evidence against you in this

6  case would be.  When he's finished, I'm going to ask you if you

7  agree that you did what the Government contends you did; so

8  listen carefully.

9      Mr. Mims, if you would give the Court a factual basis,

10  please.

11            MR. MIMS:  Should the present action go to trial, the

12  United States would prove, by eyewitness testimony, documentary

13  evidence, statements of the defendant, and expert testimony,

14  that on or about January 25, 2016, and on or about February 13,

15  2016, in the Northern District of Mississippi, Lindsey N.

16  Downs, defendant, did knowingly and intentionally possess, with

17  intent to distribute, methamphetamine, a Schedule II controlled

18  substance in violation of Title 21, U.S. Code, Sections

19  841(a)(1) and (b)(1)(C).

20      The Government would also prove, in a similar manner, that

21  on or about January 25, 2016, in the Northern District of

22  Mississippi, Lindsey N. Downs, defendant, did knowingly and

23  intentionally possess a firearm during, and in relation to, a

24  drug-trafficking crime, that is, possession with intent to

25  distribute methamphetamine, a Schedule II controlled substance

as charged in Count 1, all in violation of Title 18, U.S. Code, Section 924(c)(1)(A).

Specifically, the Government would expect to prove that on January 25, 2016, an officer on parole with the Saltillo, Mississippi police department observed the defendant, Downs, driving a vehicle approximately 20 miles per hour over the posted speed limit.

The officer initiated his lights and sirens and attempted to stop Downs. Downs, however, led the officer on a high-speed pursuit well in excess of 100 miles per hour until she crashed the vehicle she was driving into a ditch on the side of the road. The officer approached the wrecked vehicle and found Downs unconscious.

During the process of removing Downs from the wrecked vehicle, the officer found a .380-caliber semiautomatic pistol loaded with several rounds of ammunition strapped to a holster on her person. The arresting officer also discovered approximately 3 ounces of methamphetamine in the vehicle.

After she was arrested and taken to a hospital, Downs was subsequently interviewed by law enforcement agents. She was advised of her *Miranda* rights and warnings and made a knowing and voluntary waiver of those rights and agreed to speak with law enforcement.

Downs admitted to possessing the methamphetamine found in the vehicle and told agents that she carried the firearm for

1   protection because she sells and distributes methamphetamine.

2   She also provided further cooperation concerning her

3   involvement in methamphetamine distribution in the Northern

4   District of Mississippi and elsewhere.  Downs was later

5   released on bond from charges stemming from this arrest.

6        On or about February 13, 2016, the Government would expect

7   to prove that a trooper with the Mississippi Highway Patrol, on

8   duty in Tippah County, Mississippi, passed a vehicle traveling

9   east on U.S. 72 that failed to dim its bright headlights.

10       The trooper stopped the vehicle and advised the driver of

11  the reason for the stop.  The driver acknowledged that his high

12  beams were on and his low beam headlights did not function

13  properly.  The trooper identified Lindsey N. Downs as the

14  passenger in the vehicle.

15       During his interaction with the driver and Downs, the

16  trooper observed what he knew, from his training and

17  experience, to be a glass pipe used for smoking methamphetamine

18  in plain view inside the vehicle.  Additionally, when Downs

19  produced her identification, the trooper observed small plastic

20  bags in her purse that he knew to be commonly used to package

21  methamphetamine.

22       He then instructed Downs and the driver to exit the

23  vehicle and, upon searching it, found a pink bag containing

24  approximately 5 ounces of methamphetamine, along with scales

25  and other drug paraphernalia belonging to Downs.

1       The Government would further prove that the substances

2  seized from Downs on or about January 25, 2016, and

3  February 13, 2016, were sent to the DEA laboratory for testing

4  and analysis and are, in fact, methamphetamine hydrochloride.

5       Furthermore, the 380-caliber semiautomatic pistol found on

6  Downs' person was examined by a special agent with the ATF and,

7  in fact, is a firearm as defined in Title 18 of the U.S. Code.

8       Finally, the Government would show that Lee and Tippah

9  Counties are located within the Northern District of

10 Mississippi for purposes of venue.

11          THE COURT:  Okay.

12      Ms. Downs, do you agree with the prosecutor's summary of

13 what you did?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Mr. Farese?

16          MR. FARESE:  Yes, sir.

17          THE COURT:  Very well.  The Court finds there is a

18 factual basis for this defendant to plead guilty.  Now, I'm

19 going to ask you, Ms. Downs -- there are three counts in this

20 information.  Counts 1 and 2 charge you with possession of

21 methamphetamine with the intent to distribute; and you've been

22 told the elements of those, Counts 1 and 2.

23      As to Counts 1 and 2 charging you with possession with

24 intent to distribute, and possess with intent to distribute,

25 methamphetamine, do you plead guilty or not guilty?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  Very well.  Counts 1 and 2, you've

3  entered a plea of guilty.  Now, Count 3 charges you with

4  possession of a firearm during, and in relation to, a

5  drug-trafficking crime.  As to that count, do you plead guilty

6  or not guilty?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  Very well.  Since you acknowledge that

9  you are in fact guilty of the three counts in this information,

10  you know what the maximum possible punishment is, you're aware

11  that parole has been abolished, you know that the Court is

12  going to look to the guidelines in assessing an appropriate

13  sentence in your case, since you're voluntarily pleading

14  guilty, the Court does hereby accept your guilty plea and

15  enters a judgment of guilty on your plea.

16      Now, Ms. Downs, the United States Probation Service will

17  conduct a detailed investigation into your background and to

18  all facts giving rise to the commission of this offense.  A

19  detailed written Presentence Report will be prepared.  You and

20  your attorney, Mr. Farese, will have access to that report.

21  You may object to any part of the report you feel is not

22  accurate.

23      Hopefully, the probation service will resolve all the

24  objections to the Presentence Report.  If they're unable to

25  resolve all the objections or disputes concerning the

1  Presentence Report, I will set the matter down for hearing and

2  will ultimately be responsible for ruling on the objections to

3  the Presentence Report.  You'll be sentenced thereafter.

4        Now, do we have any question, Mr. Farese, Mr. Mims?

5           MR. FARESE:  No, sir, Your Honor.

6           MR. MIMS:  No, sir.

7           THE COURT:  Okay.  Let's see.  Okay.  I'm going to

8  set sentencing in this case for December the 29th of this year.

9  Okay.  Do you have any questions?  Do you need to interview her

10 today?

11          MR. TOLLISON:  Yes, sir.  We've made arrangements.

12 Thank you, Your Honor.

13          THE COURT:  You've made arrangements?

14          MR. TOLLISON:  Yes, sir.

15          THE COURT:  You going over to Lafayette County?

16          MR. TOLLISON:  I believe we're going to interview her

17 upstairs.

18          THE COURT:  Okay.  Well, you'll need to be

19 interviewed by the probation officer today.  After that --

20 well, you're remanded to the custody of the United States

21 Marshal now to await sentencing.

22          MR. FARESE:  Thank you, Your Honor.

23          THE COURT:  Yes, sir.

24               (THE HEARING ENDED AT 2:40 p.m.)

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4              I, Rita Davis Young, Federal Official Realtime

5    Court Reporter, in and for the United States District Court for

6    the Northern District of Mississippi, do hereby certify that

7    pursuant to Section 753, Title 28, United States Code that the

8    foregoing is a true and correct transcript of the

9    stenographically reported proceedings held in the

10   above-entitled matter; and that the transcript page format is

11   in conformance with the regulations of the Judicial Conference

12   of the United States.

13

14

15              Dated this 23rd day of January, 2016.

16

17

18

19              /s/ Rita Davis Young
                RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
20              Federal Official Court Reporter

21

22

23

24

25