1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF MISSISSIPPI

3

UNITED STATES OF AMERICA,         )
4                                 )
        Plaintiff,                )        CASE NO. 1:16CR50
5                                 )
            vs.                   )
6                                 )
LINDSEY N. DOWNS,                 )
7                                 )
        Defendant.                )
8    _____

9

10    SENTENCING AS TO COUNTS 1, 2, AND 3 OF THE INFORMATION
         BEFORE SENIOR DISTRICT JUDGE GLEN H. DAVIDSON
11        WEDNESDAY, JANUARY 4, 2017; 10:00 A.M.
                  OXFORD, MISSISSIPPI
12
    FOR THE GOVERNMENT:
13
        United States Attorney's Office
14      CHAD DOLEAC, ESQ.
        900 Jefferson Avenue
15      Oxford, Mississippi  38655-3608

16
    FOR THE DEFENDANT:
17
        Farese, Farese & Farese
18      TONY FARESE, ESQ.
        122 Church Street
19      Post Office Box 98
        Ashland, Mississippi  38603-0098
20

21
        Proceedings recorded by mechanical stenography, transcript
22 produced by computer.

23
            RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
24          FEDERAL OFFICIAL COURT REPORTER
          911 JACKSON AVENUE EAST, SUITE 369
25             OXFORD, MISSISSIPPI  38655

1       (CALL TO ORDER OF THE COURT)

2           THE COURT:  Let's see.  The Court takes up, at this

3  time, sentencing in Cause No. 1:16CR50, United States of

4  America v. Lindsey D. Downs.  The record should reflect that

5  the United States is represented in this proceeding by

6  Assistant United States Attorney Chad Doleac.  Ms. Downs is in

7  court with her attorney, Mr. Anthony L. Farese.

8       Now, Counsel, the submissions to the Court indicate that

9  there are no objections to the Presentence Report?  Is that

10  correct?

11          MR. FARESE:  That is correct, Your Honor.

12          THE COURT:  Very well.

13          MR. DOLEAC:  Yes, sir, Your Honor.

14          THE COURT:  If you'll come around and stand before

15  the Court, please.

16      (PARTIES COMPLYING)

17          THE COURT:  There being no objections to the

18  Presentence Investigation Report, the Court adopts those

19  findings and conclusions set forth in the Presentence

20  Investigation Report without change; factual findings made by

21  the United States Probation Service are adopted by the Court.

22      Now, in this case, the gun count carries a mandatory

23  minimum sentence.  One or more counts of conviction carry a

24  mandatory minimum term of imprisonment, but the sentence

25  imposed can be below the statutory minimum based upon the

1    Government's motion for downward departure; and that motion is

2    made by the United States where they tell the Court that this

3    defendant has substantially assisted the Government in further

4    prosecutions in this case.

5        The Court determines that the guideline that's applicable

6    to this case is a total offense level of 23, criminal history

7    category I.  Counts 1 and 2, the charge of possession with

8    intent to distribute and possession with intent to distribute

9    methamphetamine, a schedule II controlled substance, the

10   guidelines applicable to those two counts carry a recommended

11   period of incarceration from 46 to 57 months on each count of

12   conviction.

13       Count 3, the firearm's count, has a statutory minimum of

14   5 years consecutive to all other counts.  But I state, for the

15   record, that the United States has filed a motion pursuant to

16   Paragraph 5K1 of the Sentencing Commission Guidelines

17   authorizing this Court to depart downward.

18       Now, let me ask, is this Ms. Downs in the courtroom,

19   Ms. Brenda Downs?

20           MR. FARESE:  It is, Your Honor.

21           THE COURT:  Yes, ma'am.  If you would move down where

22   I could see you.  I just want to thank you and commend you for

23   what you've done for this young lady in the face of many

24   troubling conditions and hardships I know you've faced.

25       And I also want to commend you for taking care of this

1 daughter who I am now -- I believe is close to, what, 15 years

2 old?

3          MS. BRENDA DOWNS:  Seven.  Her daughter is seven.

4          THE COURT:  Okay.  And that daughter is with you in

5 your home?

6          MS. BRENDA DOWNS:  Yes.

7          THE COURT:  Well, if there's one stabilizing factor

8 in all of this material I've read relative to Ms. Downs, you

9 are certainly one of those.  And I commend you for it.  You've

10 had a tough time.  Okay.

11     Now, let's see.  You know, in spite of all you've been

12 into, Ms. Downs, you've had some positive people, Ms. Inman; I

13 read her letter.  She's a contemporary of yours, about the same

14 age, a recruiter for Ole Miss.  And she's now employed in the

15 admissions office at Ole Miss, I believe.  And she says she's

16 been a friend of yours ever since you started the first grade.

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Also, I have a letter, a real good

19 letter, from Ms. Luker and Ms. Settlemires.  And she's a

20 professor at Blue Mountain College?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And she's certainly been a positive

23 influence with you.  It's just -- it baffles me how someone

24 your age, 23 years old -- you've had experiences that -- it

25 baffles me that all of this has taken place in your young life.

1          Mr. Farese, at this time, I'll hear any statement you or

2    your client wish to make prior to the imposition of sentence.

3               MR. FARESE:  Yes, sir.

4               THE DEFENDANT:  I feel like, for the first 21 years

5    of my life, I did exactly what I was supposed to.  I was

6    working hard, and I was going where I thought I needed to go.

7    And, once I started drugs, everything just went downhill.

8    Every decision I made was the wrong one.

9          And it wasn't until I was detoxing and finally sober that

10   I could look back and see that I had just made terrible

11   decisions.  And I had just realized that the path that I was

12   walking down is not one that I want to get to the end of.  I

13   don't want to be addicted to drugs.  I don't want to make the

14   same mistakes over and over.

15         And Ms. Settlemires, she was preaching at the jail; and

16   she really helped me find God in a whole new light and made

17   this experience manageable, told me to take it one day at a

18   time.  So 86,000 seconds at a time, I took it.

19              THE COURT:  Well, in addition to reading the letters

20   I've just mentioned, I also read your lengthy submissions to

21   the Court.  How long ago was it when she pled guilty, about

22   two -- it was some months ago.

23              MR. FARESE:  Yes, sir.

24              THE COURT:  But, anyway, the comment I wanted to

25   make, you've gained weight; and you look a lot healthier than

1  you did when you appeared before me pleading guilty.  Now, what

2  that is, is you're off that meth.

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Yeah.  You look so much better than you

5  did just whatever that was, 5 or 6 months ago, maybe not that

6  long.  How long ago has it been?

7          MR. TOLLISON:  It was August 25th of last year, Your

8  Honor.

9          THE COURT:  Okay.  Well, I just make that comment;

10 you look so much healthier.  And you've been in the Tippah

11 County Jail all this time?

12         MR. FARESE:  The vast majority, Your Honor; and then

13 she was moved to Oxford and then Monroe County.

14         THE COURT:  Okay.  Monroe County?

15         MR. FARESE:  Yes, sir.  In Aberdeen.

16         THE COURT:  Well -- okay.  Anything else you want to

17 say to me, Ms. Downs?

18         THE DEFENDANT:  I'm sorry that I'm here.  I'm sorry

19 that I put myself and my family and my daughter through this.

20 I'm sorry that I didn't even realize that my addiction was

21 touching everyone around me, not just myself.

22         THE COURT:  Okay.

23    Mr. Farese, do you --

24         MR. FARESE:  Yes, sir, Your Honor.  Of course, the

25 Government's filed a 5K1.1 motion for a downward departure.

1 Ms. Downs has cooperated with the Government to the best of her

2 ability.  We think she sincerely and honestly provided help.

3 She's testified to a federal grand jury, and I think that she's

4 acknowledged her wrongdoing in this matter.

5        I've asked the Court to consider some 3553(a) factors in

6 this particular case and -- I think that are pertinent to

7 mention here.  She's only 23 years of age.  And, unfortunately,

8 when she was six months old, her mother was unable to take care

9 of her.  Her mother was a stripper and a drug addict.

10        The father was drug addicted as well.  Lindsey has eight

11 step-siblings.  She really did not know them.  She went to live

12 with Brenda and Gary Downs in Tiplersville, Mississippi in

13 Tippah County; and they really raised her.  Unfortunately,

14 when -- while Lindsey was incarcerated, Mr. Gary Downs passed

15 away.  She was unable to attend his funeral.

16        But they worked extremely hard.  They were laborers.

17 Money was not plentiful.  But Brenda has been, really, a

18 surrogate mother; and she's here today.  She's 62 years of age,

19 and she's disabled.  But, when Lindsey was 15 and in high

20 school, she became pregnant with the only child she has, Mylie

21 Grace Downs; and Ms. Brenda has been raising that child.

22        Lindsey did graduate from Walnut High School in 2011.  She

23 made good grades and was a straight A student in her final

24 year, Your Honor.  She received an associate's degree in arts

25 with a major in English education in 2013.  She had attended

1   Ole Miss, and she lacked a semester in completing her

2 bachelor's degree in English education.

3     She has suffered mental and emotional challenges, Your

4 Honor, through her life.  She has a history of depression,

5 which included post-partum depression.  She's previously

6 attempted suicide on three occasions in her life.

7     She's been a repeated victim of domestic violence and was

8 raped by an acquaintance at the age of 22.  I sincerely suggest

9 to the Court and ask that the Court recommend the 500-hour

10 intensive drug treatment program.

11     Because of the gun count, she will not be eligible to

12 receive any reduction in sentence; but we certainly need that

13 drug education, drug counseling; so that, hopefully, when she

14 returns back to society, she will be able to face the demon and

15 conquer the demon of addiction.

16     In spite of these difficulties, Lindsey has been a good

17 mother.  She's tried to participate, with the help of

18 Ms. Brenda, in being a part of Mylie Grace's life.  But, during

19 this course of drug addiction, she has fallen to depths that

20 only can be analogized to, I guess, the prodigal son.

21     She worked as an escort.  She was introduced to drugs by a

22 boyfriend, and that's what began this long and destructive

23 road.  She did not dry out until she was actually incarcerated.

24 She began cooperating with the Government after some

25 incarcerations.

1       And, quite candidly, I, as her lawyer, told the agents not

2  to let her bond out after the Lee County matter because I was

3  afraid that she could not stay straight.  She was cooperating

4  and did get out, and then was subsequently arrested in Tippah

5  County on the last -- last scope -- or the last charge.

6       But I do think it's important that she's the union of a

7  couple that were drug addicted.  I thank Ms. Brenda Downs and

8  the good Lord for the influence she's had in Lindsey's life

9  and, really, one of the few stabilizing factors.

10      Ms. Settlemires is a very nice lady.  During the period of

11 time that Lindsey was drying out in Tippah County, that's where

12 she really met Lindsey and has made a very positive impact on

13 Lindsey's life during that part of the detox that was -- that

14 occurred.  She cycled through that, which is outlined in her

15 lengthy letter to the Court.

16      And it's interesting how I've seen, as her lawyer, that

17 she blamed other people.  She blamed the people that were

18 trying to help her.  She blamed Brenda.  She blamed me.  She

19 blamed other folks.  And then, fortunately, she's come out of

20 the fog of addiction.

21      But she recognizes that saying I'm sorry doesn't take it

22 back to go on the monopoly board.  She's got a debt to pay to

23 society.  She's trying to pay that.  She's cooperated with the

24 Government, has agreed to continue to cooperate, Your Honor.

25      It is truly a tragic, tragic thing; and, if you look at

1 the scope of this, the destructiveness that occurred in her

2 young life occurred at a rapid, rapid pace. From the beginning

3 of addiction to her dealing and then all of a sudden escalated

4 and mushroomed into --

5        THE COURT: How old was she when she was introduced

6 to methamphetamine by this boyfriend?

7        THE DEFENDANT: Twenty-one.

8        THE COURT: Twenty-one?

9        MR. FARESE: And it's really an 18-month period of

10 time that she's gone from using drugs to standing in front of

11 you with a 924(c) charge. The result of carrying the gun was a

12 result of the acquaintance rape at 22, to be quite candid.

13        There's no justification for using and dealing drugs or

14 having a firearm while you're doing that; but, so the Court

15 knows, that was her explanation to me when I first met her with

16 the gun scenario out of the Lee County arrest.

17        As the Court knows, she's got an indictment in the Circuit

18 Court of Lafayette County for burglary, which really was a

19 boyfriend. It was in a condo house owned by a doctor

20 boyfriend, but she's got a co-defendant that was a boyfriend

21 that she maintains did that.

22        She's got an indictment in Lee County and an indictment in

23 Alcorn County that we've got to deal with. But this scope of

24 destruction was like a wild fire that occurred in an 18-month

25 period. But, on the positive side, this may very well have

1 saved her life because she was truly on a roller coaster of

2 serious --

3        THE COURT:  Well, that's an observation I make.  Had

4 you not been arrested in Lee County as -- after that high speed

5 chase and wreck and so forth, and had you not come in contact

6 with Mr. Tony Farese, I doubt that you'd be alive today.

7        THE DEFENDANT:  I agree, sir.

8        THE COURT:  If that course of conduct had continued,

9 you probably wouldn't be alive right now.  Fortunately, you've

10 had Mr. Farese's assistance; and you were not indicted in this

11 Court.  She pled to an information.

12        MR. DOLEAC:  That's correct, Your Honor.

13        THE COURT:  And I stand here -- Ms. Downs, Ms. Brenda

14 Downs, it just appears to me that maybe it -- this is what

15 saved your life.  Because you couldn't be running up and down

16 the highway on meth, running off the road and so forth.  I

17 mean, it's just -- if there is a real bad instance that maybe

18 the -- in the long run, this would be a blessing for you.

19 Okay.  I didn't mean to interrupt you, Mr. Farese.

20        MR. FARESE:  Your Honor, I'm through.  We ask the

21 Court to consider the matters that we've listed in our 3553(a)

22 factors that I've reviewed with the Court and, again, the

23 Government's 5K1.1 motion.  Thank you, Your Honor.

24        THE COURT:  Mr. Doleac?

25        MR. DOLEAC:  Your Honor, excuse me.  The Court has

1  noted that the Government has filed a motion for downward

2  departure.  We would respectfully ask the Court grant that.

3  And Mr. Farese touched on this; Ms. Downs' cooperation --

4  continued cooperation may be requested by the Government in

5  relation to the matters that she has previously cooperated with

6  us about and some ongoing matters.

7          So we would just, I guess, state for her -- for her

8  information today that we ask her not to forget that; her

9  continued cooperation is required as a result of her plea

10  agreement and supplement.  But, other than that, Your Honor,

11  the Government has nothing to add.

12          THE COURT:  Very well.  Thank you.

13      Well, Ms. Downs, as you heard me recite these guideline

14  provisions, you face a very lengthy sentence in this case.

15  Counts 1 and 2 carry a recommended sentence of 46 to 57 months

16  to be followed by a 5-year mandatory minimum.  So you could

17  very easily be facing a 10-year sentence or more.

18          But, now, the fact that the Government has filed a 5K1

19  motion for downward departure, that gives this Court some

20  leeway in sentencing you in this case.  Otherwise, I would have

21  to impose at least that mandatory minimum 5-year sentence.

22          It's just an unusual case to have someone in this Court

23  who has had all of these life experiences at your still young

24  age.  And, you know, your grades -- your last couple of years

25  in high school were 4.0, straight A grades.

1        And then you won a national competition for art, a

2   national, United States, the whole country, from the Beta Club

3   art contest.  I've never had anybody with that sort of record

4   before me either.

5        And then you -- you lack only -- from the records I had,

6   it appears that you lack only one semester graduating from

7   college.

8              THE DEFENDANT:  (Nodding head).

9              THE COURT:  You know, life's just a series of

10  decisions, choices.  And for, looks like, nearly 20 years, you

11  were making good choices.  And then the bottom just fell out.

12  And that's all -- all because of meth.

13       But I say, you look like a different person than you did

14  when you appeared before me just months ago to plead guilty.  I

15  bet you've gained 10 or 15 pounds.  You look a lot healthier.

16       And, you know, thank goodness you ran into this --

17  Mr. Farese and then this Ms. Settlemires, and some of these

18  other people that -- and, again, I can't say enough about

19  Ms. Brenda Downs.  And that continues with your daughter.

20             THE DEFENDANT:  (Nodding head).

21             THE COURT:  You went to Walnut High School?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  And you live in Tippah County,

24  Tiplersville.

25       Ms. Brenda Downs, I read your letter.  Is there anything

1  you'd like to say in addition to your letter?  (Pause).  You

2  think I have everything before me?

3         MS. BRENDA DOWNS:  I don't know.  Probably not, but

4  I'd just like to state right now my mind's not doing very well.

5         THE COURT:  I couldn't hear her.

6         MS. BRENDA DOWNS:  I said probably not.  There's

7  probably lots that I could tell you, but I just -- my mind's

8  just kind of in a fog.  I can't really -- you know.

9         THE COURT:  Okay.

10      As I've stated before, the Government has filed this

11  motion for a downward departure pursuant to Paragraph 5K1 of

12  the United States Sentencing Commission Guidelines based upon

13  substantial assistance.

14      Pursuant to the Sentencing Reform Act of 1984, it is the

15  judgment of the Court that the defendant, Lindsey N. Downs, is

16  hereby committed to the custody of the United States Bureau of

17  Prisons to be imprisoned for a term of 48 months.

18      This term consists of 18 months on Counts 1 and 2 of the

19  information to which this defendant pled guilty to be served

20  concurrently, and 30 months on Count 3 of the information to be

21  served consecutively to the sentence imposed in Counts 1 and 2.

22  That's a total period of incarceration of 48 months.  And,

23  Ms. Downs, that -- that sentence could -- under the guidelines,

24  could have gone up to 12 years.

25         THE DEFENDANT:  (Nodding head).

1           THE COURT:  But I'm sentencing you to 4 years.  Upon

2    release from imprisonment, the defendant shall be placed on

3    supervised release for a term of 3 years on Counts 1, 2, and 3

4    of the information.  All terms of supervised release shall be

5    served concurrently.

6           Now, the Court realizes that certain factors are within

7    the sole discretion of the United States Bureau of Prisons; but

8    the Court recommends that this defendant be afforded the

9    opportunity to enroll and be a participant in the 500-hour

10   intensive drug treatment program.

11          Further, the Court recommends to the United States Bureau

12   of Prisons that it take into account the grades and college

13   hours that this defendant possesses; and that she be considered

14   for any sort of educational programs that are available to the

15   Bureau of Prisons, including any online program where she might

16   do some work towards her college degree.

17          Further, the Court recommends that the Bureau of Prisons

18   consider her for an instructor's position in literacy programs

19   that exist in the Bureau of Prisons, that she could -- in the

20   opinion of the Court, she could help other inmates obtain a GED

21   license.

22          I'm just saying that the Bureau -- I realize this is all

23   recommendations, and I recommend that the Bureau take into

24   account her intelligence and the education that she has today.

25          Now, this will apply -- these conditions will apply only

1   after the defendant is released from incarceration.  She shall

2   cooperate in the collection of DNA as directed by her probation

3   officer.  She shall comply with the standard conditions that

4   have been adopted by this Court.

5        In addition, taking into consideration any prior court

6   ruling on objections, if any, to the special conditions of

7   supervision outlined in the Presentence Report, and considering

8   there is no additional opposition, the Court imposes the

9   following special conditions:  Following supervised release,

10   the defendant shall participate in a program of testing and

11   treatment for substance abuse as directed by her probation

12   officer.

13        She shall participate in a program of mental health

14   treatment as directed by the probation officer until such time

15   as she is released from the program by her probation officer.

16   After release from prison, she shall submit any personal

17   property, residence, vehicle, papers, and so forth to

18   reasonable searches, including electronic communications, by

19   the United States Probation Service.

20        An officer may conduct a search pursuant to this condition

21   only when reasonable suspicion exists that the defendant has

22   violated a condition of supervision.  Any search must be

23   conducted in a reasonable time and in a reasonable manner.

24        Now, this -- this -- these conditions only apply after

25   you're released from incarceration.  No fine is being ordered

1  due to the defendant's inability to pay.  It is ordered that

2  she shall pay to the United States District Court Clerk's

3  Office the special assessment of $100 on each count of

4  conviction, which is required in all criminal cases, for a

5  total of $300, which shall be paid immediately but taking into

6  account her financial situation.

7       Now, in imposing sentence in this case, the Court has

8  departed downward for the following reasons:  The sentence is

9  below the guideline range, and the primary basis of that

10 downward departure is the motion filed by the United States

11 pursuant to Paragraph 5K1.1 of the guidelines manual.

12      Restitution is not applicable in this case; so, therefore,

13 there's no order of restitution.  In imposing this sentence,

14 the Court has considered the advisory guideline range, the

15 statutory penalties, and the sentencing factors enumerated in

16 18, United States Code, Section 3553(a), as well as the

17 Government's motion.

18      Now, the factors that the Court has considered pursuant to

19 18 U.S.C. Section 3553(a), the Court has considered the nature

20 and circumstances of the offenses, the history and

21 characteristics of the defendant, the sentence imposed reflects

22 the seriousness of the offense, promotes respect for the law,

23 and provides just punishment for the offense.

24      Taking all factors into consideration, the Court is of the

25 opinion that this sentence affords adequate deterrence to

1  criminal conduct and protects the public from any further

2  crimes by this defendant.  I just hope and pray that you never

3  appear in court again.

4           THE DEFENDANT:  (Nodding head).

5           THE COURT:  Also, the sentence provides the defendant

6  with needed educational or vocational training, medical care,

7  and other correctional treatment in the most effective manner.

8  For these reasons, the Court has imposed the sentence of

9  48 months.

10      The Court considers the motion filed by the United States

11  to be the type of departure -- to be the type contemplated by

12  the United States Sentencing Commission in the provisions in

13  the manual recognizing substantial assistance to the

14  Government.

15      Now, Ms. Downs, pursuant to the plea agreement in this

16  case and the motion for downward departure, the defendant has

17  waived all rights to appeal the conviction and/or sentence

18  imposed and the manner in which the sentence was imposed on any

19  ground whatsoever, including, but not limited to, the grounds

20  set forth in 18 U.S.C. Section 3742.

21      The defendant has also waived all rights to contest or

22  collaterally attack the conviction or sentence in any

23  postconviction proceedings, including, but not limited to, any

24  motion brought pursuant to 28 U.S.C. Section 2255, except to

25  claims relating to prosecutorial misconduct and/or ineffective

1   assistance of counsel.

2       Now, that -- that concludes sentencing in this case.  Do I

3   have any questions?

4           MR. DOLEAC:  Not from the Government, Your Honor.

5   Thank you.

6           MR. FARESE:  No, sir, not from the defendant, Your

7   Honor.

8           THE COURT:  Okay.  Now, the Court has one further

9   recommendation to the United States Bureau of Prisons.  The

10  Court recommends that this defendant be evaluated for her

11  mental health status.  And that, if it's determined

12  appropriate, that she be given such treatment as might be

13  required.

14      It appears she does have some depression and anxiety

15  problems, and the Court recommends that that be addressed by

16  the appropriate medical authorities at the U.S. Bureau of

17  Prisons.  Okay.  Do we have any further question?

18          MR. FARESE:  No, sir, Your Honor.  Thank you, sir.

19          THE COURT:  Okay.  Ms. Downs, I hope that this will

20  be a positive experience for you, that you'll get off of that

21  meth; and that this sentence and the recommendations this Court

22  have made provide some light at the end of the tunnel.

23      Okay.  That concludes the sentencing.  The defendant will

24  be remanded to the custody of the United States Marshal.  Let's

25  see.  Just a moment.  Let me confer here with one of the

1  marshals just a minute.

2      (Off-the-record discussion)

3         THE COURT:  Okay.  Now, we've got another sentencing

4  set at eleven o'clock.  The Court's going to be in recess until

5  eleven.

6               (THE HEARING ENDED AT 10:38 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4              I, Rita Davis Young, Federal Official Realtime

 5   Court Reporter, in and for the United States District Court for

 6   the Northern District of Mississippi, do hereby certify that

 7   pursuant to Section 753, Title 28, United States Code that the

 8   foregoing is a true and correct transcript of the

 9   stenographically reported proceedings held in the

10   above-entitled matter; and that the transcript page format is

11   in conformance with the regulations of the Judicial Conference

12   of the United States.

13

14

15              Dated this 2nd day of May, 2017.

16

17

18

19              /s/ Rita Davis Young
                RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
20              Federal Official Court Reporter

21

22

23

24

25
```